IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Cr No. 4:18-cr-00188-SDJ-KPJ-1 |
| | § | |
| DANIEL MENDOZA, | § | |
| (Reg.# 28122-078) | § | |
| Defendant. | § | |

## MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018

COMES Movant, DANIEL MENDOZA ("Mendoza"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. STATEMENT OF JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an

1

exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. <u>STATEMENT OF THE CASE</u>

### <u>Procedural Background</u>

On November 15, 2018, a grand jury in United States District Court for the Eastern District of Texas, Sherman Division, returned a six (6) Count First Superseding Indictment, charging Mendoza. See Doc. 56.[1] Count 1s charged Mendoza with Conspiracy to Possess with Intent to Manufacture and Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. *Id.* Count 3s charged Mendoza with Possession of a Firearm in Furtherance of A Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). *Id.* The First Superseding Indictment also contained a Notice of Intention to Seek Criminal Forfeiture, pursuant to 18 U.S.C. § 924(d) and 21 U.S.C. § 853. *Id.*

---

[1] "Doc." refers to the U. S. District Court for the Eastern District of Texas, Sherman Division, Docket Report in Criminal Number 4:18-cr-00188-SDJ-KPJ-1, which is immediately followed by the Docket Entry number.

On February 7, 2019, a Change of Plea Hearing was held before Magistrate Judge Christine A. Nowak. See Doc. 85. Mendoza plead guilty as to Counts 1s and 3s of the First Superseding Indictment, pursuant to a Written Plea Agreement. See Doc. 87. In exchange for his guilty pleas, the government agreed to dismiss all remaining charges against Daniel and not to prosecute him for any additional non-tax related criminal charges. *Id.*

On June 30, 2006, a Sentencing Hearing was held before District Judge Marcia A. Crone. See Doc. 139. Mendoza was sentenced to a 324 months as to Count 1s and 60 months as to Count 3s, to run consecutively; for a total term of 384 months' imprisonment. See Doc. 142. It is followed by 5 years of Supervised Release on each count, to run concurrently. *Id.* The Court also ordered a a Mandatory Special Assessment Fee of $200. *Id.* On the motion of the government, the Court dismissed all other charges pending against Mendoza.

On October 2, 2019, Mendoza filed a Notice of Appeal. See Doc. 144. On Appeal, Mendoza's appellate attorney, Kimberly S. Keller ("Keller"), filed an *Ander's* Brief in his appeal, wherein Keller claims that after careful review of the record and the applicable law, it is the good faith belief and professional opinion of counsel that this case presents no non-frivolous basis for an appeal. On October 27, 2020, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") filed an

unpublished Opinion affirming the District Court's Judgment. See Doc. 187.

On March 1, 2021, Mendoza filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), which remains pending before the Court. See Doc. 196.

### III. DISCUSSION

As a preliminary matter, Mendoza respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014) (*Pro se* pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

### A.    Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence

This Court has the power to adjust Mendoza's sentence. District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district court may now resentence if the inmate files a motion after exhausting administrative remedies. The reasons that can justify resentencing are not limited to medical, age, or family circumstances. A district court may resentence if the inmate demonstrates

4

extraordinary and compelling reasons for a sentence reduction. Such reasons are present in this case.

### 1. Historical Framework

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of the Comprehensive Crime Control Act of 1984. That legislation provided that a district court could modify a final term of imprisonment when extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A)(i). In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the sentencing court. Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence. Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that the statute was intended, in part, to abolish and replace federal parole. Rather than have the parole board review for rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term on imprisonment. S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. § 3582 acts as a "safety valve" for the "modification of sentences" that would previously have been addressed through the former parole system. *Id*. at 121. The provision was intended "to assure the availability of specific review and reduction of a term of imprisonment for "extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." *Id*. Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

### 2. Section 3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t) ("The Commission…shall describe what should be considered "extraordinary and compelling reasons" for sentence reduction, including the criteria to be applied and a list of specific examples." Congress provided one limitation to that authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Rehabilitation could, however, be considered with other reasons to justify a reduction.

Pursuant to section 994(p) of title 28, United States Code, the United States Sentencing Commission hereby submits to the Congress the following amendments to the Guidelines Manual and the reasons therefor. As authorized by such section, the Commission specifies an effective date of November 1, 2023, for these amendments:

6

(b) *Extraordinary and Compelling Reasons.–* Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) *Medical Circumstance of the Defendant.–*

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.

(B) The defendant is—

(i) suffering from a serious physical or medical condition,
(ii) suffering from a serious functional or cognitive impairment, or
(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of

infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

(2) *Age of the Defendant.*— The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3) *Family Circumstances of the Defendant.*—

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4) *Victim of Abuse.*— The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A) sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions); that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5) *Other Reasons.*— The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the

reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) *Unusually Long Sentence.*— If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

This amendment responds to, among other things, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239, which amended 18 U.S.C. § 3582(c)(1)(A) to authorize courts to grant a motion for a sentence reduction upon a defendant's own motion. Previously, a court was authorized to do so only upon the motion of the Director of the Bureau of Prisons ("BOP"). Congress amended the law for the express purpose, set forth on the face of the enactment, of "increasing the use" of sentence reduction motions under section 3582(c)(1)(A). First Step Act § 603(b).

3. The First Step Act

The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among other things, transformed the process for compassionate release. *Id.* at § 603. Now, instead of depending upon the BOP to determine an inmate's eligibility for

extraordinary and compelling reasons and the filing of a motion by the BOP, a court can resentence "upon motion of the defendant." A defendant can file an appropriate motion if the he or she has exhausted all administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). The purpose and effect of this provision is to give federal courts the ability to hear and resentence a defendant even in the absence of a BOP motion. Congress labeled this change "Increasing the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018). Senator Cardin noted in the record that the bill "expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199 at S7774 (Dec. 18, 2018). In the House, Representative Nadler noted that the First Step Act includes "a number of very positive changes, such as ... improving application of compassionate release, and providing other measures to improve the welfare of federal inmates." 164 Cong. R. H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction. Judicial authority is no longer limited to cases that have the approval of the BOP.

4.   Mendoza Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

In this case, Mendoza has been having a difficult time filing an Administrative Remedy with the Warden at FCI Pollock. Mendoza has attempted numerous times to get assistance in filing his administrative remedy from his counselor and case manager at FCI Pollock. Unfortunately, they have not been available to help him with the proper BOP document (BP-9) to file his remedy. Alternatively, Mendoza filed a copy of this motion with the Warden at FCI Pollock thereby exhausting his remedy. Because 30 days have lapsed from the receipt of the motion and the BOP has failed to file a motion on his behalf, Mendoza has exhausted his administrative remedy pursuant to 18 U.S.C. § 3582(c)(1)(A).

**B.** **The Changes in Relevant Law, along with Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Are Extraordinary and Compelling Circumstances That Warrant Release.**

Section 3582(c) states that a district court cannot modify a term of imprisonment once it has been imposed except that, in any case:

12

The court, upon motion of the Director of the Bureau of Prisons, or the defendant, pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

> (i)    extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A).

In this case, there are at least five extraordinary and compelling reasons warranting such a reduction, discussed as follows:

### 1.   Drug Weight Calculation

Here, Mendoza urges the Court to assess *United States v. Stanback*, 377 F. Supp. 3d 618 (W.D. Va. 2019). In *Stanback*, Kelly George Stanback, represented by counsel, filed a motion to reduce his sentence pursuant to Section 404(b) of the First Step Act of 2018. ECF No. 1449. He asks the court to reduce his current sentence of 622 months to time served. The government asserts that Stanback is ineligible for consideration of a reduction in his sentence, and in the alternative, that if he is eligible for consideration, a further reduction of his sentence is not warranted. The government suggests that the only relief to which Stanback is entitled is a reduction in his term of supervised release from 5 years to 4 years. For the reasons set forth

13

below, the court granted Stanback's request and modified his sentence to time served, to be followed by a 4-year term of supervised release.

The drug weight is an element of the offense and that any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, if Stanback were sentenced today, his sentence would be based on distributing 5 grams or more of cocaine base, and not 3,000 kg to 10,000 kg of Marijuana equivalent.

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In *Alleyne*, the Court applied *Apprendi* to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. *Id.* at 116, 133 S.Ct. 2151 (overruling *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ).

Neither *Apprendi* nor *Alleyne* are retroactively applicable on collateral review. See *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that *Apprendi* does not apply retroactively to cases on collateral review); and *United States v. Stewart*, 540 Fed.Appx. 171 (4th Cir. 2013) (*per curiam*) (noting that *Alleyne* has not been made retroactively applicable to cases on collateral review). However, for a period of time after *Apprendi* was decided, including before passage of the Fair Sentencing Act in 2010, the jury ordinarily made a finding regarding the threshold penalty, but the court could and did impose statutory-minimum penalties regardless of any jury finding. That practice was authorized by *Harris*, and *Alleyne* did not overrule *Harris* until three years later, and three years after the Fair Sentencing Act was enacted. Nonetheless, Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so.

*Alleyne* made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at 116, 133 S.Ct. 2151. Under *Alleyne*, this court is not free to ignore that finding and impose a penalty based on the 45 kilograms or more of actual methamphetamine (actual) as referenced in the Factual Basis. Thus, although *Apprendi* and *Alleyne* are

not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at \*6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); *United States v. Dodd*, No. 3:03-CR-18-3, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "[b]oth *Apprendi* and *Alleyne* are binding on this Court for sentencings held today."); *United States v. Davis*, No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2nd Cir. Apr. 5, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); see also *United States v. Laguerre*, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

In this case, Mendoza pleaded guilty as to Count 1s of the First Superseding Indictment: Conspiracy to Possess with the Intent to Manufacture and Distribute Methamphetamine. However, Mendoza was held accountable for 45 kilograms or

more of methamphetamine (actual). Hence, Mendoza should be resentenced accordingly.

      2.     First Step Act— Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A)

This responds to the First Step Act of 2018, Pub. L. 115–391 (Dec. 21, 2018) ("First Step Act" or "Act"), which contains numerous provisions related to sentencing, prison programming, recidivism reduction efforts, and reentry procedures. Specifically, the sentencing reform provisions of the Act (1) amended the sentencing modification procedures set forth in 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to file a motion seeking a reduction in the defendant's term of imprisonment under certain circumstances; (2) reduced certain enhanced penalties imposed pursuant to 21 U.S.C. § 851 for some repeat offenders and changed the prior offenses that qualify for such enhanced penalties; (3) broadened the eligibility criteria of the "safety valve" provision at 18 U.S.C. § 3553(f); (4) limited the "stacking" of certain mandatory minimum penalties imposed under 18 U.S.C. § 924(c) for multiple offenses that involve using, carrying, possessing, brandishing, or discharging a firearm in furtherance of a crime of violence or drug trafficking offense; and (5) allowed for retroactive application of the Fair Sentencing Act of 2010. Revisions to the Guidelines Manual may be appropriate to implement the Act's changes to 18 U.S.C.

§ 3582(c)(1)(A).

The 814 Amendment had also revised the list of "extraordinary and compelling reasons" in §1B1.13 in several ways.

The sixth amendment added a new category ("Unusually Long Sentences") providing that if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. See USSG §1B1.13 (b)(6).

In this case, Mendoza was erroneously sentenced with the incorrect drug amount and had already served his sentence for more than 5 years. Under the 814 Amendment, this is considered to be an unusually long and harsh sentence. Thus, this presents as an "extraordinary and compelling reasons." Hence, Mendoza is asking this Court to grant his compassionate release.

### 3. Methamphetamine Drug Purity Is Not a Proxy for Culpability

Methamphetamine, commonly known as "meth", is a highly addictive and potent stimulant drug that can have devastating effects on individuals and communities. It was made a Schedule II controlled substance in 1970. In light of the serious harm caused by methamphetamine, the criminal justice system has taken a strong stance against methamphetamine trafficking. When methamphetamine dealers are arrested they face stiff penalties designed to punish the offender and deter recidivism. In determining appropriate punishment, courts must consider a range of factors, including the weight of the controlled substance, a defendant's prior criminal history, adjustments such as the defendant's role in the drug organization, and other relevant circumstances. However, one factor – the purity of methamphetamine – has been given disproportionate emphasis in determining punishment when purity is not a proxy for culpability.

The United States Sentencing Guidelines use a two-tiered system to set the base offense level for prosecuting a methamphetamine distribution case. One tier establishes a base offense level for high-purity methamphetamine known as "actual methamphetamine" while the other tier sets the level for "mixtures" which are substances containing a detectable amount of methamphetamine. As you might

19

expect, defendants prosecuted for distribution of actual methamphetamine get longer sentences than defendants caught with a methamphetamine mixture. The intention of this sentencing disparity is to target the most serious offenders, but its effect is to punish all offenders with the most severe penalties without regard for an individual's actual role in the offense. This highlights the need for reform in drug sentencing laws and a more nuanced approach to addressing drug-related offenses.

Take for example a Defendant charged with Possession with Intent to Distribute 4.5 kilograms of actual methamphetamine versus a Defendant charged with distributing the same amount of a mixture of methamphetamine. Under the Statute, crimes involving pure methamphetamine trigger a ten-year mandatory minimum penalty at 50 grams, while crimes involving a methamphetamine mixture trigger a ten-year mandatory minimum penalty at 500 grams. This is commonly referred to as the 10:1 purity ratio from the mandatory minimum penalties contained in 21 U.S.C. § 841(b)(1). With no prior criminal history, the first Defendant with actual methamphetamine has a base offense level of 38 (235 – 293 months of imprisonment) while the second Defendant with a mixture has a base offense level of 32 (121 – 151 months of imprisonment). That is a 9 ½ year difference at the low end of the guideline range or a 94 percent increase in the sentence due solely to the purity of the methamphetamine.

The concept of drug purity plays a critical role in drug-related offenses. The reason behind increasing a defendant's sentence based on drug purity is rooted in the fact that controlled substances are often cut and diluted with other substances as they pass from wholesaler to regional distributors to street-level dealers. In devising the Guidelines, the Sentencing Commission took into account that a defendant in possession of a controlled substance of very high purity is an indication of the defendant's significant involvement in the criminal organization and proximity to the source of the drugs. "The point, then, of increasing a defendant's sentence based on drug purity is to punish defendants who have prominent roles in drug distribution." *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1255 (D.N.M. 2017). However, the assumption made by the Sentencing Commission regarding the correlation between methamphetamine purity and a defendant's criminal role is not supported by real-world evidence. In fact, this assumption potentially leads to serious miscarriages of justice. As *Ibarra-Sandoval* remarked, "the Commission's assumption regarding the connection between methamphetamine purity and criminal role is divorced from reality." 265 F. Supp. 3d 1249 at 1255.

As the court in *Ibarra-Sandoval* discussed, "The average purity of methamphetamine today is over 90 percent. This means that the sentencing Guidelines would treat the average individual convicted of a crime involving

21

methamphetamine as a kingpin or leader, even though that simply is not true." Id. at 1255–56. In *United States v. Bean*, 371 F. Supp. 3d 46, 52–53 (D.N.H. 2019) the court stated, "In the current market, the purity of methamphetamine does not necessarily reflect a defendant's role in the distribution chain. Low-level street dealers are just as likely as so-called 'kingpins' to have access to, and be charged with distribution of, extremely pure methamphetamine. In effect, then, the purity-based methamphetamine guidelines are treating all defendants as kingpins, even though that is not necessarily true."

Trends have shown that the price per pure gram of methamphetamine has steadily decreased while the purity has increased. From 2011 to 2016, the average purity of one gram of methamphetamine has ranged from a low of 85.5 percent in early 2011 to almost 95 percent in early 2014, and for the third quarter of 2016, averaged 93.5 percent pure. See, *United States v. Nawanna*, 321 F.Supp.3d 943, 951 (N.D. Iowa 2018). "Today, most methamphetamine seized at all distribution levels is remarkably pure, which means that higher purity is not a good indicator of a defendant's place in the chain of distribution." *United States v. Siddoway*, 2023 WL 2246705, at *3 (D.Idaho, 2023). Today, a low-level street dealer would be distributing methamphetamine that would be similar in purity to the methamphetamine that came from the top of the supply chain.

The *Nawanna* court found that "because today's methamphetamine is substantially pure, purity is not a proxy for relative culpability." 321 F.Supp.3d at 951. The *Nawanna* court noted "that there was once some truth to the Commission's assumption that large quantities are associated with high purities, because methamphetamine was cut as it worked its way down to the street-level dealer or user, but that is no longer the case." *Id*. The *Nawanna* court concluded that "because of the generally very high purity of methamphetamine available today at all levels of the distribution chain, virtually all defendants today face enhanced punishment for a factor present in virtually all methamphetamine cases, not enhanced punishment based on individualized determinations, making the Guidelines purity enhancement excessive." *Id*. at 954.

The current Guidelines for methamphetamine have proven to be ineffective in achieving its intended goal of targeting high-level drug distributors. Instead, they recommend harsher penalties for all individuals involved in the distribution of methamphetamine, regardless of their level of involvement. The Guideline's reliance on drug purity as a factor for determining an individual's role within the organization is outdated and irrelevant in today's drug landscape. As a result, the Guidelines recommend more severe punishments for all offenders based on the drug's purity without taking into account each participant's role in the offense.

The Federal Statute, 21 U.S.C. § 841(b)(1), should be amended to abolish arbitrary minimum sentences ascribed to actual methamphetamine. Minimum statutory sentences restrict a court's ability to fashion a sentence that takes into account a defendant's unique relevant circumstances and role in the offense. Furthermore, the United States Sentencing Guidelines should be updated to reflect that purity is no longer a proxy for culpability. The Guideline for methamphetamine mixtures should be applied regardless of the purity of the methamphetamine possessed.

4. Refusal to Follow the Actual (and Ice) Methamphetamine Guideline Based on Policy Disagreement

Two judges in the Northern District of Iowa recently have announced that they disagree with on policy grounds, and no longer will follow, the marijuana equivalency called for in the Sentencing Guidelines when imposing sentences in cases involving actual methamphetamine and ice.

The Sentencing Guidelines distinguish between a methamphetamine mixture and actual/pure methamphetamine or ice, which it defines as methamphetamine that is at least 80% pure, treating actual/pure methamphetamine or ice ten times more harshly than a mixture of marijuana. One gram of actual (pure) methamphetamine or ice has a marijuana equivalency of 20 kilograms whereas one gram of a

methamphetamine mixture has an equivalency of 2 kilograms. The ratio has its roots in 21 U.S.C. 841(b)(1). Comment 27(c) to U.S.S.G. § 2D1.1 offers the only explanation of the Commission's view on the relevance of purity to the appropriate sentence, asserting that purity "is probative of the defendant's role or position in the chain of distribution" and that "since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs."

As Chief Judge Leonard T. Strand and District Judge Mark W. Bennett explain in *United States v. Harry*, 313 F. Supp. 3d 969 (N.D. Iowa 2018) and *United States v. Nawanna*, 321 F. Supp. 3d 943 (N.D. Iowa 2018), respectively, there is no empirical basis for the 10-1 ratio and, because nearly all methamphetamine trafficked is substantially pure, purity is not an accurate proxy for culpability and it makes little sense to enhance virtually all methamphetamine defendants' sentences on the basis of purity. Both judges indicated that they therefore will apply the only the 2 kilogram marijuana equivalency even in cases involving actual/pure methamphetamine or ice.

As with the crack/powder cocaine disparity, District Courts have the discretion to disagree with the Guidelines on policy grounds and find that a particular Guideline should not applied in a given case. In this case involving actual/pure

25

methamphetamine or ice, it is essential to note that there is no empirical basis for applying the 10-1 ratio and that, because purity is not actually a proxy for culpability, the court should not apply it in this case. In *U.S. v. Robinson*, No. 3:21-CR-14-CWR-FKB-2 (S.D. Miss. Dec. 23, 2022), the Guidelines use drug purity as a proxy for culpability. But national experience suggests that is no longer true for methamphetamine. The DEA data show that most methamphetamine confiscated today is "pure" regardless of whether the defendant is a kingpin or a low-level addict. See *United States v. Hendricks*, 307 F. Supp. 3d 1104, 1108 (D. Idaho 2018) ("Today, most methamphetamine seized at all distribution levels is remarkably pure, which means that higher purity is not a good indicator of a defendant's place in the chain of distribution."); *Carrillo*, 440 F. Supp. 3d at 1154 ("Since the Guidelines first took effect, unusually pure methamphetamine has become increasingly more common.").

Given the on-the-ground reality in methamphetamine cases, the better way to determine culpability is to examine all of the circumstances of the defendant's case and life– seeing the defendant as a "whole person," as the Supreme Court just instructed in *Concepcion*. 142 S. Ct. at 2395. There are sentencing enhancements available for leaders, organizers, or managers of criminal enterprises. If the defendant's case warrants, those enhancements should be applied. In the context of methamphetamine though, purity is no longer probative of the defendant's

culpability. In conclusion, Robinson's motion was granted by the District Court and Judge Reeves, ordered that his base offense level will be 26.

Thus, in light of *Robinson*, the Court should consider and resentence Mendoza based on methamphetamine and not actual methamphetamine.

5. <u>The Underlying Offense in Count 3s: Conspiracy to Possess with Intent to Manufacture and Distribute Methamphetamine, Is Not a "Controlled Substance Offense," Hence, Count 3s Must Be Dismissed.</u>

In *United States v. Dupree,* No. 9-13776 (11th Cir. Jan.18, 2023)(en banc), the Eleventh held that the definition of "controlled substance offense" in USSG § 4B1.2(b) does not include inchoate offenses, such as conspiracy and attempt. This is another victory for the defense in using the sea change in administrative deference recognized by the Supreme Court in *Kisor v. Wilke*, 139 S. Ct. 2400 (2019). The Eleventh Circuit's decision begins this way:

> This appeal requires us to consider whether an inchoate offense qualifies as a "controlled substance offense" for purposes of the career offender sentencing enhancement under the United States Sentencing Guidelines. U.S. Sent'g Guidelines Manual § 4B1.2(b) (U.S. Sent'g Comm'n 2018). In this case, the district court sentenced Brandon Dupree as a career offender based partly on his conviction for conspiring to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846. Dupree appealed his sentence, arguing that his § 846 conspiracy conviction could not serve as a predicate for his career offender enhancement because the Guidelines' definition of "controlled substance offense" omitted conspiracy and other inchoate crimes.

A panel of this Court affirmed Dupree's sentence, concluding that the decisions in *United States v. Weir*, 51 F.3d 1031 (11th Cir. 1995), and *United States v. Dale*, 54 F.3d 690 (11th Cir. 1995), foreclosed his argument. *United States v. Dupree*, 849 F. App'x 911 (11th Cir. 2021) (unpublished), reh'g en banc granted, opinion vacated 25 F.4[th] 1341 (11th Cir. 2022). The court granted Dupree's petition to rehear the case en banc. After careful consideration, and with the benefit of oral argument, we hold that the definition of "controlled substance offense" in § 4B1.2(b) does not include inchoate offenses. Therefore, Dupree's sentence was vacated and remanded to the district court for resentencing.

Dupree argues that he was not a career offender under the Guidelines. A defendant is considered a career offender for purposes of sentencing if, among other things, the defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense" and his "instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." U.S. Sent'g Guidelines Manual § 4B1.1(a). Dupree concedes that his prior state drug convictions qualified as controlled substance offenses. But he argues that his § 846 conspiracy conviction does not count as the required third predicate offense because it was not a controlled substance offense. Section 4B1.2 provides:

> The term "controlled substance offense" means an offense under federal
> or state law, punishable by imprisonment for a term exceeding one year,
> that prohibits the manufacture, import, export, distribution, or
> dispensing of a controlled substance . . . or the possession of a
> controlled substance . . . with intent to manufacture, import, export,
> distribute, or dispense.

*Id.* § 4B1.2(b). The commentary in Application Note 1 to § 4B1.2 adds that the term

"'controlled substance offense' include[s] the offenses of aiding and abetting,

conspiring, and attempting to commit such offenses." *Id.* § 4B1.2(b) cmt. n.1.

Dupree contends that his § 846 conspiracy conviction is not a controlled

substance offense because § 4B1.2(b)'s "controlled substance offense" definition

unambiguously excludes inchoate offenses. Because the Guideline is unambiguous,

he argues, we must not defer to the commentary's broader definition of controlled

substance offense to include inchoate offenses.[2] The Eleventh Circuit agree.

---

[2]

This question has sharply divided our fellow circuits. The Third and Sixth Circuits sitting en banc, along with panels of the Fourth and D.C. Circuits, have held that inchoate crimes do not qualify as controlled substance offenses under the Guideline. See *United States v. Campbell*, 22 F.4th 438, 440 (4th Cir. 2022) ("Because the Sentencing Guidelines' definition of a 'controlled substance offense' does not include an attempt crime, we must vacate the enhanced sentence[.]"); accord *United States v. Nasir*, 17 F.4th 459, 468–72 (3d Cir. 2021) (en banc); *United States v. Havis*, 927 F.3d 382, 386–87 (6th Cir. 2019) (en banc); *United States v. Winstead*, 890 F.3d 1082, 1090–91 (D.C. Cir. 2018). Panels of the First, Second, Seventh, and Ninth Circuits, and the Eighth Circuit sitting en banc, have reached the opposite conclusion. See *United States v. Smith*, 989 F.3d 575, 585 (7th Cir.) ("We conclude[] that § 4B1.2's Application Note 1 is authoritative and that 'controlled substance offense' includes inchoate offenses."), cert. denied, 142 S. Ct. 488 (2021); *United States v. Lewis*, 963 F.3d 16, 21–24 (1st Cir. 2020); *United States v. Richardson*, 958 F.3d 151, 154–55 (2d Cir. 2020); *United States v. Crum*, 934 F.3d 963, 965–67 (9th Cir. 2019); *United States v. Mendoza-Figueroa*, 65 F.3d 691, 694 (8th Cir. 1995). But the First and Ninth Circuit panels suggested their decisions might have been different if they were not constrained by their circuits' prior precedent. See *Lewis*, 963 F.3d at 25 ("None of this is to say how we would rule today were

The definition of "controlled substance offense" in § 4B1.2(b) of the Sentencing Guidelines does not include inchoate offenses like conspiracy and attempt. To the extent that this holding conflicts with the Court prior precedent, that precedent is overruled. The district court erred by sentencing Dupree as a career offender because his conspiracy conviction under 21 U.S.C. § 846 was not a controlled substance offense. The Eleventh Circuit vacate Dupree's sentence and remand for resentencing consistent with an Opinion. Hence, same relief should apply to Mendoza.

Since Mendoza's original sentencing, the Fourth Circuit has held that conspiracy under 21 U.S.C. § 846 is not a "controlled substance offense" . . . See *United States v. Norman*, 935 F.3d 232, 237-38 (4th Cir. 2019). Mendoza argues that the reasoning in *Norman* extends to the conclusion that a RICO conspiracy involving underlying drug offenses similarly cannot be a "controlled substance offense" under USSG § 4B1.2(b).

Specifically, the *Norman* court reaffirmed the principle that although USSG § 4B1.2 extended to certain conspiracy offenses, "'an overt act is an element of the

---

the option of an uncircumscribed review available. That the circuits are split suggests that the underlying question is close."); *Crumb*, 934 F.3d at 966 ("If we were free to do so, we would follow the Sixth and D.C. Circuits' lead."). The Fifth Circuit recently vacated its decision holding that a defendant's conspiracy convictions qualified as controlled substance offenses and will address this question en banc. See *United States v. Vargas*, 35 F.4th 936, 938–940 (5th Cir.), reh'g en banc granted, opinion vacated 45 F. 4th 1083 (5th Cir. 2022).

generic definition of 'conspiracy' as incorporated into § 4B1.2." *Id*. at 237 (quoting *United States v. McCollum*, 885 F.3d 300, 308 (4th Cir. 2018)). In contrast, "'conspiracy' under § 846 does not require an overt act." *Id*. at 238 (citing *United States v. Shabani*, 513 U.S. 10, 11 (1994)). Thus the Fourth Circuit concluded that "a 'conspiracy' conviction under § 846 is a categorical mismatch to the generic crime of conspiracy enumerated in § 4B1.2(b)" and could not be the subject of a career offender enhancement. *Id*. at 239.

Mendoza argues that his § 846 conspiracy conviction does not count as a controlled substance offense in light of *Dupree* and *Norman*. However, his convictions on Count 3s was based off of a conspiracy charge, which under several recent circuit cases are not considered "controlled substance offense." Hence, Count 3s should be dismissed and have Mendoza be re-sentenced.

6. Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct

With respect to the need to avoid unwarranted sentencing disparities, Mendoza urges the Court to consider the following *Redd* cases:

i. *United States v. Clark, Case No. 11-CR-30-2-JPS (E.D. Wis. Jul. 23, 2020)*

- Quoting that in *Redd*, the Court evaluated whether extraordinary and compelling reasons existed to reduce the

31

sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020 WL 1248493, at *5. There, the court determined that the disparity was "primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id*. at *6.

ii.    *United States v. Brooks, Case No. 07-cr-20047-JES-DGB (C.D. Ill. May. 15, 2020)*

   •    Quoting that in *Redd*, the district court held "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in USSG § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case constitute extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement."

Also, the Sixth Circuit says conspiracy to distribute drugs is not a "controlled substance offense." In *Jackson*, Defendant pleaded guilty to drug trafficking. At sentencing, the district court found that he was a career offender under § 4B1.1 based in part on his prior conviction under federal law for conspiracy to distribute a controlled substance. The Sixth Circuit held that conspiracy does not qualify as a "controlled substance offense" under § 4B1.2 and remanded. *U.S. v. Jackson*, __ F.3d __ (6th Cir. Apr. 22, 2021) No. 18-5676.6.

The Fourth Circuit finds federal crack conspiracy is not a "controlled substance offense." A defendant convicted of possession of a firearm by a felon is subject to an enhanced offense level under § 2K2.1(a)(4) if he has a prior conviction for a "controlled substance offense," which includes conspiracy. Defendant had a prior federal conviction for conspiracy to possess crack with intent to distribute. The Fourth Circuit held that because federal conspiracy does not require proof of an overt act, it is not a "controlled substance offense" as the guidelines use that term. *U.S. v. Norman*, __ F.3d __ (4th Cir. Aug. 15, 2019) No. 18-4214.

Mendoza is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act and compassionate release grants of courts in light of the instant pandemic. Nor does the First Step Act's lack of retroactivity justify withholding sentencing relief given the overall purpose of the First Step Act amendments, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

Next, Mendoza argues that a reduction of sentence is warranted to avoid unwanted sentencing disparities, taking into consideration case-specific

circumstances related to Mendoza's character, and in light of his post-sentencing rehabilitation. Mendoza contends that leaving his current sentence in place creates disparity between Mendoza and comparably situated defendants. In addition to the need to avoid unwarranted sentence disparities, Mendoza argues that the unique circumstances of his case warrant a variance.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted

sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09))*; United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

Under 18 U.S.C. § 3582(c)(2), to modify Mendoza's sentence, taking into account the advisory nature of the guidelines after *Brooker* and the considerations set

forth in 18 U.S.C. § 3553(a). The court should find that a sentence of 120 months is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

Finally, the combination of factors, health conditions, as well as post-sentencing rehabilitation, and the changing sentencing landscape justify granting compassionate release to Mendoza. More so, his BOP record does not show that he is violent or a threat to public safety.

Accordingly, Mendoza's motion should be granted.

## V. **CONCLUSION**

For the foregoing reason, Mendoza prays this Court would consider his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018 in accordance with U.S.S.G. Amendment 814, based upon the "extraordinary and compelling reasons" and reduce his sentence. Also, Mendoza respectfully requests this Court to consider the BOP record, his medical condition, and his circumstances and join in recommending his release.

Respectfully submitted,

Dated: October 29, 2024

*Daniel Mendoza*

DANIEL MENDOZA
REG. NO. 28122-078
FCI POLLOCK
FEDERAL CORR. INSTITUTION
P.O. BOX 4050
POLLOCK, LA 71467

## CERTIFICATE OF SERVICE

I hereby certify that on October 29 2024, a true and correct copy of the above and foregoing Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018 was sent via U. S. Mail, postage prepaid, Ernest Gonzalez, Assistant U.S. Attorney at U.S. Attorney's Office - Plano, 101 E. Park Blvd., Suite 500, Plano, TX 75074.

*Daniel Mendoza*

DANIEL MENDOZA